FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 11, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RICHARD SANDERS,<br><br>Plaintiff,<br><br>v.<br><br>WESTERN EXPRESS, INC.,<br><br>Defendant. | No. 1:20-CV-03137-SAB<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

Before the Court is Defendant's Motion to Dismiss, ECF No. 13. The Court held a videoconference hearing on the motion—along with Defendant's Motion to Transfer, ECF No. 14—on February 5, 2021. Plaintiff was represented by Graham Lambert, who appeared via videoconference, and Defendant was represented by Adam Smedstad, who also appeared via videoconference. Defendant argues that this matter should be dismissed because the Court lacks personal jurisdiction over it. In addition, Defendant argues that, if the Court does conclude it has jurisdiction, certain of Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6). Having reviewed the briefing and the applicable case law, the Court denies the motion to dismiss.

### Facts and Procedural History

Plaintiff alleges violations of the Federal Labor Standards Act, the Washington Industrial Welfare Act, the Washington Minimum Wage Act, and the Washington Consumer Protection Act. Defendant, a corporation headquartered and

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS \* 1**

incorporated in Tennessee, is a freight transportation company that provides trucking services across the United States and Canada. The majority of Defendant's non-driver employees live and work in Tennessee, and the majority of Defendant's operations occur east of the Mississippi River. Plaintiff, a resident of Washington State, was employed as a truck driver by Defendant from December 2019 through August 2020. He alleges that he and his proposed class were paid on a per mile basis and were not compensated for rest breaks or non-driving time work as required by both Washington and federal law. He also alleges that he and his class were "on duty" for twenty-four hours in violation of federal law. He seeks damages including loss of wages and compensation. To provide the hook for his Washington state law claims, Plaintiff's complaint describes one instance in which he drove from Tulare, California to Lacey, Washington—over nine hundred miles—but received no compensation for his work. This was also the last week Plaintiff worked for Defendant as a truck driver.

Plaintiff filed his original complaint on September 1, 2020. ECF No. 1. Defendants filed a motion to transfer, ECF No. 7, and a motion to dismiss for lack of personal jurisdiction, ECF No. 8. In response to the motion to dismiss, Plaintiff filed a First Amended Complaint ("FAC"), ECF No. 9, as a matter of right. The Court accordingly dismissed the pending transfer and dismissal motions as moot. ECF No. 12. Defendant then filed the instant motion as well as another motion to transfer. ECF Nos. 13 and 14.

## Legal Standard

1. <u>Rule 12(b)(2) Personal Jurisdiction</u>

A defendant may move to dismiss a case for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is appropriate and cannot simply rest on the allegations in the complaint. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). In assessing whether the plaintiff

has met their burden, the court takes any uncontroverted allegations in the complaint as true and resolves any conflicts between the facts in documentary evidence in the plaintiff's favor. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

If there is no federal statute specifically governing jurisdiction, federal courts follow state law in determining the bounds of its personal jurisdiction. *Global Commodities Trading Group, Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020). Washington's long-arm statute is co-extensive with federal due process requirements and so the jurisdictional analysis under state law and federal law is the same. *Shute v. Carnival Cruise Lines*, 113 Wash.2d 763, 764 (1989); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004). Federal due process allows a court to exercise personal jurisdiction over a nonresident defendant if that defendant has at least some "minimum contacts" with the forum such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

There are two types of personal jurisdiction: general personal jurisdiction and specific personal jurisdiction. General personal jurisdiction allows a court to hear any claim against a defendant if they are "at home" in the forum state. *Bristol-Myer Squibb Co. v. Sup. Court of Cal. of San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) (citing *Goodyear Dunlop Tire Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). In contrast, specific personal jurisdiction exists only if the suit arises out of or relates to the defendant's contacts with the forum such that the defendant is reasonably subject to the state's regulations. *Id.* (citing *Goodyear*, 654 U.S. at 919). Thus, specific personal jurisdiction focuses on the relationship between the defendant, the forum, and the litigation. *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014).

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS \* 3**

Courts use a three-prong test for analyzing claims of specific personal jurisdiction. *Global Commodities,* 972 F.3d at 1107. First, the non-resident defendant must purposefully direct its activities or consummate some transaction with the forum or a resident of the forum, or otherwise perform some act that purposefully avails it of the privilege of conducting activities in the forum. *Schwarzenegger*, 374 F.3d at 802. Courts apply a "purposeful availment" test for claims sounding in contract, whereas they apply a "purposeful direction" test for claims sounding in tort. *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). Some courts have found that wage and hour claims similar to those raised here are closer to sounding in contract than in tort and should be analyzed under the purposeful availment framework. Others have concluded that they are closer to tort claims. Still others have found that they are neither tort nor contract claims. *Compare Gonzalez v. Crete Carrier Corp.*, No. C19-0186-JCC, 2019 WL 2172840 (W.D. Wash. May 20, 2019) (applying the purposeful availment test) *with Huddleston v. John Christner Trucking, LLC*, 2017 WL 4310348, at *4-5 (E.D. Cal. Sept. 28, 2017) *and Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1022 (N.D. Cal. 2015) (applying both tests). Nonetheless, courts should consider the parties' entire course of dealing, not solely the particular contract or conduct giving rise to the claim when determining whether a defendant has minimum contacts with a forum. *See Global Commodities*, 972 F.3d at 1108. Instead, courts should consider whether the defendant's conduct and connection with the forum state are such that the defendant should reasonably anticipate being hailed into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Second, the claim must arise out of or relate to the defendant's forum-related activities. *Id.* This element is met if, but for the contacts between the defendant and the forum state, the cause of action would not have arisen. *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 561 (9th Cir. 1995). Put otherwise, courts consider whether the

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS * 4**

defendant "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).

Third, the exercise of jurisdiction must be reasonable. *Id.* If the plaintiff succeeds in satisfying the first two prongs of the test, the burden shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985). In determining whether exercise of jurisdiction would be reasonable, courts should consider: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenience and effective relief; and (7) the existence of an alternative forum. *Terracom*, 49 F.3d at 561. No one factor is dispositive. *Id.*

  2. Rule 12(b)(6) Failure to State a Claim

The court may also dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "A complaint may fail to show a right of relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

In ruling on a Rule 12(b)(6) motion, the Court must accept all material allegations as true and construe the complaint in the light most favorable to the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). Thus, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This does not require the court to accept legal conclusions as true. *Iqbal*, 556 U.S.

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS * 5**

at 678. Claims are plausible if they allow the court to draw the reasonable inference, based on its own judicial experience and common sense, that the defendant is liable for the misconduct alleged. *Id.* at 678-79. A complaint that offers only labels and conclusions or a "formulaic recitation" of the elements of a cause of action does not meet this burden. *Id.*

### Rule 12(b)(2) Discussion

Defendant first argues that this case should be dismissed for lack of personal jurisdiction. It argues that this Court lacks jurisdiction over it because it does not have minimum contacts with Washington. In response, Plaintiff argues that this Court does have personal jurisdiction because Defendant purposefully reached into Washington by hiring Washington residents, implementing policies that violated Washington law, and by conducting business within Washington. The parties agree that general personal jurisdiction does not exist here, so the only dispute is whether specific personal jurisdiction exists. For the reasons discussed below, the Court finds it has personal jurisdiction over Defendant and denies Defendant's motion to dismiss for lack of personal jurisdiction.

First, regardless of which test the Court applies, Defendant has purposefully directed its activities or purposefully availed itself of the privilege of conducting business in Washington. Defendant argues that it is located in Tennessee, has done comparatively little business in Washington, owns no property in Washington, and that Plaintiff's voluntary residency in this state is not enough to create jurisdiction. Although Defendant is correct that Plaintiff's Washington residency on its own is not enough to create substantial connections between it and Washington, phrasing the case in this term is overly simplistic. In contrast to cases like *Walden v. Fiore*, 571 U.S. 277 (2014) where the Supreme Court found a TSA agent lacked sufficient minimum contacts to the forum state where the only connection to the forum was defendant's interaction with a resident plaintiff at an out-of-state airport, Defendant has much more substantial contacts with Washington in this case. Here, Defendant

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS \* 6**

purposefully availed itself of the benefits of Washington law by employing Plaintiff and other Washington residents and by doing business in Washington state, even if it employed more non-Washington residents and did more business outside of Washington. *See, e.g., McNutt v. Swift Transport. Co. of Ariz., LLC*, No. 18-CV-05668, 2020 WL 3819239, at *8-9 (W.D. Wash. July 7, 2020); *Parr v. Stevens Transport, Inc.*, No. C19-02610-WHA, 2019 WL 4933583, at *2 (N.D. Cal. Oc. 7, 2019) ("defendants established minimum contacts with California when they adopted uniform employment and wage policies, then sent their drivers into California to collect and deliver freight, thus purposefully directing their activities at California."); *Gonzalez*, 2019 WL 2172840, at *3 (W.D. Wash. May 20, 2019) (finding defendant purposefully availed itself of Washington law by hiring Washington residents, owning property in Washington, and conducting business in Washington). "It is thus not [Plaintiff's] personal choice to live in [Washington] which drives the jurisdictional analysis, but [Defendant's] choice to dispatch deliveries to and from [Washington] which does." *Huddleston*, 2018 WL 4310348, at *4. Thus, Defendant purposefully availed itself and purposefully directed its actions at Washington. The first element is therefore satisfied.

Next, Plaintiff's claims arise out of Defendant's contacts with Washington. The fact that Defendant is headquartered in Tennessee and made decisions regarding the challenged policies in Tennessee does not negate the fact that those policies were implemented in Washington. But for Defendant's operations in Washington, the allegedly illegal policies would not have violated Washington law and Plaintiff would not have brought suit. The Court is guided by the analysis of the Eastern District of California in *Huddleston*. There, the court concluded that even though the employer made all of the policy decisions at its headquarters in Oklahoma, but for its decision to engage in business in California, the claim would not have arisen. To reach the decision Defendant advocates—that a corporation can avoid jurisdiction anytime it makes a decision in one state, but that decision

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS * 7**

necessarily impacts residents of another state—would improperly conflate general and specific jurisdiction in a way that would prevent states from protecting residents from out-of-state actors. Defendant's contacts with Washington—the decision to hire Washington residents, to do business in Washington, and to apply policies that violate Washington law—are the but-for cause of Plaintiff's claims. *See Parr*, 2019 WL 4933583, at *2. Accordingly, the second element is satisfied.

Because the first two elements are satisfied, the exercise of jurisdiction is presumptively reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. at 475-76 (1985). Furthermore, it is not unreasonable to expect a corporation with a national business presence to litigate in Washington when it did business that was directed at Washington and gave rise to the instant litigation. Finally, whether this case could have been transferred to or refiled in Tennessee is not a relevant factor where jurisdiction in the forum state is otherwise reasonable. *Corporate Inv. Business Brokers v. Melcher*, 824 F.2d 786, 791 (9th Cir. 1987).

Accordingly, the Court concludes it has specific personal jurisdiction over Defendant. The motion to dismiss for lack of personal jurisdiction is therefore denied.

## Rule 12(b)(6) Discussion

Defendant argues, in the alternative, that the Court should dismiss a number of Plaintiff's claims for failure to state a claim. Plaintiff opposes all of Defendant's arguments. The Court considers each argument in turn and, for the reasons discussed herein, the Court denies Defendant's motion to dismiss for failure to state a claim.

1. Unpaid Rest Break Claim

Defendant argues the Court should dismiss Plaintiff's claims related to unpaid rest breaks because they are preempted by federal law. In response, Plaintiff argues that this argument is based on an extrinsic fact not alleged in the First Amended Complaint or supported by any documentation. He also argues that,

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS * 8**

even if the fact were included in the FAC, Washington's rest break laws are not preempted because of Ninth Circuit caselaw and because the preemption decision is not binding or persuasive. Finally, he argues that even if preemption did apply, it would not apply retroactively to dismiss his claims now.

On November 17, 2020, the Federal Motor Carrier Safety Administration ("FMCSA") determined that Washington's meal and rest break rules are preempted by federal regulation and may not be enforced as to drivers of commercial property carrying commercial motor vehicles. *Washington's Meal and Rest Break Rules for Drivers of Commercial Motor Vehicles; Petition for Determination of Preemption*, 85 Fed. Reg. 73335 (Nov. 17, 2020). Furthermore, federal regulation defines a commercial motor vehicle as a "motor vehicle used on a highway in interstate commerce to transport passengers or property when the vehicle" weighs in excess of 10,000 pounds. 49 C.F.R. § 390.5.

Plaintiff is correct that a prerequisite for the FMCSA's preemption decision to apply is missing—nowhere in the FAC or in the materials submitted to support Defendant's motion are facts suggesting that Plaintiff drove a commercial motor vehicle that weighed in excess of 10,000 pounds. 49 C.F.R. § 390.5. Generally, a court may not consider any materials beyond the pleadings in ruling on a Rule 12(b)(6) motion unless they are incorporated by reference into the complaint or are matters of which a court may take judicial notice. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). When matters outside the pleading are presented to the court, a 12(b)(6) motion converts into a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). Because Defendant asks the Court to consider materials outside the FAC and because the parties dispute that fact, the Court denies the motion at this juncture, without addressing on the merits of Defendant's preemption argument.

//
//

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS \* 9**

2. Consumer Protection Act Claim

Defendant next argues that Plaintiff has failed to state a claim under the Washington Consumer Protection Act ("CPA"). It argues that Plaintiff's CPA claim is premised on his allegation that Defendant also violated Washington's wage and hour laws, and that is insufficient to make out an unfair or deceptive act for purposes of the CPA. In response, Plaintiff argues that the courts have held that the CPA applies to Washington's wage and hour laws and that he has stated a claim. He argues that it is reasonable to assume that Defendant represented to Plaintiff and the public at large that they would be paid for the work they did for Defendant and its failure to do so constitutes a CPA violation. The Court denies Defendant's motion.

The CPA prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce. Wash. Rev. Code § 19.86.020. To state a claim under the CPA, a plaintiff must establish (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) an impact on public interest, (4) injury to the plaintiff in their business or property, and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780 (1986). An unfair or deceptive act may be a *per se* violation of a statute, but a *per se* unfair trade practice exists only when a statute that has been declared by the state legislature to constitute an unfair or deceptive act in commerce has been violated. *Merriman v. Am. Guarantee & Liability Ins. Co.*, 198 Wash. App. 594, 627 (2017) (citing *Hangman Ridge*, 105 Wash.2d at 786); *Castillo v. United Rentals, Inc.*, No. C17-1573-JLR, 2018 WL 1382597, at *8 (W.D. Wash. Mar. 19, 2018) (noting that wage and hour statutes do not include a declaration that violation constitutes a *per se* unfair trade practice). However, an unfair or deceptive act may also be demonstrated by showing that an act or practice which has a capacity to deceive a substantial portion of the public occurred in the conduct of trade or commerce. *Hangman Ridge*, 105 Wash.2d at 785-86.

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS * 10**

Other courts have recognized that violations of Washington's wage and hour laws may, in some circumstances, give rise to a CPA claim. *Kirkpatrick v. Ironwood Comms., Inc.*, No. C05-01428-JLR, 2006 WL 2381797, at *12-13 (W.D. Wash. Aug. 16, 2006); *Aziz v. Knight Transp.*, No. 2:12-CV-00904-RSL, 2012 WL 3596370, at *1-2 (W.D. Wash. Aug. 21, 2012). Those courts reasoned that advertising employment opportunities that contained false representations about wages or benefits could give rise to a CPA claim if the advertising was likely to deceive the public. However, other courts have found that, to the extent plaintiffs allege only failure to pay wages or overtime as required by law, those acts affect only the individuals employed by the defendant and are not likely to deceive a substantial portion of the public. *See May v. Honeywell Intern., Inc.*, 331 Fed. Appx. 526, 530 (9th Cir. 2009). Thus, those courts have held that violations of wage laws cannot be enforced via the CPA. *Id.* To overcome this hurdle, some courts have held that the plaintiff must also allege that defendant represented to the public that it would pay its employees at a certain rate and that the defendant failed to do so. *See Castillo*, 2018 WL 1382579, at *8.

Plaintiff has stated a claim under the CPA. First, Plaintiff alleges that Defendant failed to pay him for all work done, failed to provide compliant rest breaks, failed to pay all overtime wages, willfully refused to pay all wages, and failed to pay all wages due at termination. ECF No. 9 at ¶ 50. The Court agrees that it is reasonable to assume that Defendant represented to Plaintiff and the public that its employees would be paid for all work they did in accordance with state law. This is sufficient to show a deceptive act or practice in trade. Second, these acts occurred in trade and commerce. Third, Defendant's wage and hour policies injured Plaintiff. Finally, those policies impacted the public interest. Thus, Plaintiff has stated a claim under the CPA and Defendant's motion is denied.

//
//

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS * 11**

3. <u>Overtime Wages Claim</u>

Defendant argues that Plaintiff's overtime wages claim should be dismissed because the FAC fails to identify a specific workweek in which Plaintiff worked more than 40 hours in one week and was not paid overtime. In response, Plaintiff alleges he has adequately stated an overtime claim and that Defendant's reading of binding caselaw is overly narrow. The Court denies Defendant's motion to dismiss the overtime wages claim.

In order to survive a motion to dismiss, a plaintiff asserting a claim to overtime wages must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked. *Landers v. Quality Communications, Inc.*, 771 F.3d 638, 644-45 (9th Cir. 2014). However, the Ninth Circuit did not hold that the plaintiff must plead specific, detailed facts beyond that otherwise required under Rule 12. *Id.* at 645. Indeed, the Ninth Circuit explicitly declined to "make the approximation of overtime hours the *sine qua non* of plausibility for claims brought under the FLSA" because "most (if not all) of the detailed information concerning a plaintiff-employee's compensation and schedule is in the control of the defendants." *Id.* Instead, at a minimum, a plaintiff asserting a violation of state and federal overtime provisions must allege "that she worked more than forty hours in a given workweek without being compensated for the hours worked in excess of forty during that week." *Id.* That being said, "with the pleading of more specific facts, the closer the complaint moves toward plausibility." *Id.*

Despite this guidance, district courts have disagreed about how much specificity *Landers* actually requires. Some courts have held that *Landers* does not require a plaintiff to identify an exact calendar week and instead have held that "the allegations need only give rise to a plausible inference that there was" an instance in which the plaintiff was denied overtime payment. *Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1008 (N.D. Cal. 2016); *Boon v. Canon Bus. Solutions,*

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** * 12

*Inc.*, 592 Fed. Appx. 631, 632 (9th Cir. 2015). Meanwhile, other courts have held that *Landers* requires a showing that there was one specific week in which the plaintiff was not paid overtime. *See Rittmann v. Amazon.com, Inc.*, No. C16-01554-JCC, 2017 WL 881384, at *2 (W.D. Wash. Mar. 6, 2017).

Plaintiff's FAC alleges that, in his "final week" of working for Defendant, he drove over 900 miles from Tulare, California, to Lacey, Washington, and was not paid at all. ECF No. 9 at ¶ 10. The FAC also alleges that Plaintiff and the proposed class were paid on a per mile basis, were only paid for driving time, are not paid for work that occurs while they are not driving, and are on the road for over 24 hours. *Id.* at ¶ 9. Plaintiff has met his burden—and perhaps even surpassed—his pleading obligations under *Landers*. The motion to dismiss is therefore denied.

   4. <u>24-Hour Duty Claim</u>

Defendant next argues Plaintiff's claim that he and the class were on duty for over twenty-four hours and are entitled to compensation for the full twenty-four hours as on-duty time should be dismissed. It argues that recently issued guidance from the Department of Labor, which held that the time drivers are relieved of all duties and allowed to sleep in a sleeper berth is non-working time and is presumptively not compensable. *See* U.S. Dep't of Labor, Wage and Hour Div., Opinion Letter (July 22, 2019). In response, Plaintiff argues that a different regulation covers drivers like Plaintiff and the proposed class and that the Opinion Letter does not apply to them.

Courts are split on whether truck drivers like Plaintiff and his proposed class are covered by 29 C.F.R. § 785.22 or 29 C.F.R. § 785.41. Plaintiff points to § 785.22, which provides that, where an employee is required to be on duty for twenty-four hours or more, the employer and employee may agree to exclude bona fide meal periods and a bona fide sleeping break (of no more than eight hours) from hours worked, provided adequate sleeping facilities are furnished by the

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS \* 13**

employer and the employee can enjoy an uninterrupted night's sleep. It also provides that, where no express or implied agreement is present, the eight hours of sleeping time and lunch periods constitutes hours worked. 29 C.F.R. § 785.22(a). Thus, this regulation requires an employer to pay an employee for (1) at least sixteen hours if he is on duty for twenty-four hours if there is an agreement between the parties, even if he has spent more than eight hours sleeping or eating, or (2) for all twenty-four hours if there is no agreement. *See Browne v. P.A.M. Transport, Inc.*, No. 5:16-CV-5336-TLB, 2018 WL 5118449, at *2 (W.D. Ark. Oct. 19, 2018). In contrast, Defendant impliedly relies on 29 C.F.R. § 785.41, as referenced in DOL's Opinion Letter. Section 785.41 provides that any work an employee is required to perform while traveling must be counted as hours worked, but an employee who drives a truck is working except during meal periods or when he is permitted to sleep in adequate facilities furnished by the employer. *See Nance v. May Trucking Co.*, 685 Fed. Appx. 602, 605 (9th Cir. 2017) (finding that, under § 785.41, the district court properly relied on other federal district courts saying drivers were not entitled to compensation for time spent in sleeper berths); *Petrone v. Werner Enters., Inc.*, Nos. 8:11-CV-401-LSC and 8:12-CV-307-LSC, 2017 WL 510884, at *10 (D. Neb. Feb. 2, 2017). However, still other courts have recognized the two regulations may be harmonized, providing that employers of truck drivers may deduct eight hours of sleeping time pursuant to § 785.41, but that deduction is capped at eight hours maximum pursuant to § 785.22. *See Julian v. Swift Transp. Co. Inc.*, 360 F. Supp. 3d 932, 947-48 (D. Ariz. 2018) (giving *Auer* deference to DOL opinion letters supporting this reading of §§ 785.22 and 785.41); *Montoya v. CRST Expedited, Inc.*, 404 F. Supp. 3d 364, 394-95 (D. Mass. 2019).

The Department of Labor's Opinion Letter addressed whether a driver needs to be compensated for time spent in their sleeper berth when counting that time would put them in excess of 40 hours of work. DOL recognized that there may be some contexts in which a driver is not actively working but waiting ("engaged to

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS * 14**

wait") or where an employee is required to be on-duty for a continuous period of twenty-four hours or more. However, in reaching its conclusion, DOL abandoned an earlier interpretation of the relevant regulation and concluded that the time drivers are relieved of all duties and permitted to rest in a sleeper berth is presumptively non-working time that is not compensable absent specific factual findings that a driver is on-duty or on-call. This change was a stark change from long-standing DOL guidance, which interpreted § 785.41 and § 785.22 in conjunction to find that up to eight hours of sleeping time may be excluded in a trip longer than twenty-four hours.

Before determining whether to follow the DOL Opinion Letter, the Court finds it necessary to consider whether and how much deference is due to the Opinion Letter. Pursuant to *Auer v. Robbins*, 519 U.S. 452 (1997) and *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), deference to an agency's interpretation of a regulation is only appropriate when the regulation is genuinely ambiguous after the application of standard tools of interpretation; even then, deference is warranted only if the interpretation is authoritative, expertise-based, fair, or reflects the agency's considered judgment. *Kisor*, 139 S. Ct. at 2412.

At least one court has held that the DOL Opinion Letter at issue here is unpersuasive and should be given limited *Auer* deference because "the only reason the agency provides for its flip-flop is that its prior interpretation was 'unnecessarily burdensome for employers.'" *Montoya*, 404 F. Supp. 3d at 395. In so holding, the *Montoya* court noted that this reasoning was not entitled to deference because the FLSA was designed to protect workers, not employers. *Id.* Another court determined that the Opinion Letter was not entitled to *Auer* deference because §§ 785.22 and 785.41 are not ambiguous, so there was no need to resort to the Opinion Letter to determine the meaning of the regulations. *Julian*, 2019 WL 10948736, at *2. The *Julian* court also noted that, even if the regulations were genuinely ambiguous, deference to the Opinion Letter would be inappropriate

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS * 15**

because it provided no explanation for its position beyond alleviating burdens on employers and it decided to change its mind after 65 years of the same rule. *Id.* at *3.

The Court denies Defendant's motion to dismiss the twenty-four on-duty claim. On the face of the FAC, Plaintiff alleges that he and his proposed class were on the road for over 24 hours, had no agreements with their employers regarding meal and sleep breaks, and were not paid for all on-duty time or for rest breaks shorter than twenty minutes. ECF No. 9 at ¶ 13, ¶ 58. Assuming that the Opinion Letter did apply, dismissal of the claim would be inappropriate because factual inquiry into whether Plaintiff and his class were "on duty" during time spent in their sleeper berth or during meal breaks is necessary. Dismissal of this claim at this early stage of the case is inappropriate.

However, the Court is not convinced that the Opinion Letter is entitled to *Auer* deference. Under *Auer* and *Kisor*, even assuming that the relevant regulations were genuinely ambiguous, the Opinion Letter is entitled to deference only if DOL's interpretation is authoritative, expertise-based, fair, or reflects the agency's considered judgment. As noted by the *Julian* and *Montoya* courts, the only stated reason for the shift in policy is that the prior policy—which was in place for over sixty years—is both inconsistent with the purposes of the FLSA and not reflective of the agency's considered judgment. Accordingly, the Court denies Defendant's motion to dismiss.

5. Doe Defendants

Finally, Defendant argues that the Doe Defendants should be dismissed, arguing that Doe defendants are improper in federal court. Plaintiff argues dismissal of the Doe Defendants at this early point of the case is inappropriate because discovery has not yet occurred.

As a general rule, the use of Doe defendants is not favored. *Gillespie v. Civiletti¸* 629 F.2d 637, 642 (9th Cir. 1980). However, if a plaintiff does not know

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS * 16**

the identity of a defendant prior to filing a complaint, they should be given an opportunity to identify them unless it is clear that discovery would not uncover their identities. *Id.* The local rules reiterate this position. LCivR 10(a)(3).

Because discovery has not yet begun in this case, dismissal of the Doe Defendants at this juncture is inappropriate. Plaintiff is entitled to conduct discovery, attempt to determine the identities of any Doe Defendant, and amend the complaint to name them. The motion to dismiss the Doe Defendants is denied.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss, ECF No. 13, is **DENIED**.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order and provide copies to counsel.

**DATED** this 11th day of February 2021.



_____
Stanley A. Bastian
Chief United States District Judge

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** * 17