Joshua H. Haffner, WSBN 53292
jhh@haffnerlawyers.com
Vahan Mikayelyan, Esq., pro hac vice
vh@haffnerlawyers.com
**HAFFNER LAW PC**
445 South Figueroa Street, Suite 2625
Los Angeles, California 90071
Tel: (213) 514-5681
Fax: (213) 514-5682

Attorneys for Plaintiff Richard Sanders
on behalf of himself and all others
similarly situated

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RICHARD SANDERS, an individual, on behalf of himself and all others similarly situated, | **Case No.: 1:20-cv-03137-SAB** |
| Plaintiff, | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR RULE 23 CLASS CERTIFICATION** |
| v. | **NOTED ON MOTION CALENDAR: APRIL 7, 2022** |
| WESTERN EXPRESS, INC.; and DOES 1 through 10, inclusive, | (Assigned for all purposes to the Hon. Stanley A Bastian) |
| Defendants. | |

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF

RECORD:

PLEASE TAKE NOTICE THAT on April 7, 2022, 1.30 P.M. or as soon

thereafter as counsel may be heard, before the Honorable Stanley A Bastian, of the

United States District Court, Eastern District of Washington, located at 25 South 3rd Street, Room 201, Yakima, WA 98901, Plaintiffs Richard Sanders ("Plaintiff"), will and hereby does move for an order certifying this case as a class action under Federal Rules of Civil Procedure, Rule 23, for the following class:

> All current or former Washington residents who worked for Defendant as drivers at any time beginning three (3) years prior to the filing of the Complaint through the date notice is mailed to the Class

Plaintiff requests that this Court grant class certification of this action under Federal Rules of Civil Procedure, Rule 23(a) and 23(b), appoint Plaintiff's counsel, Joshua H. Haffner and Vahan Mikayelyan of Haffner Law PC, to serve as counsel to the class, and authorize notice to the class of the pending action and its members' right to opt-out under Federal Rules of Civil Procedure, Rule 23(d)(2).

This motion is made pursuant to Federal Rules of Civil Procedure, Rule 23 and United States District Court, Eastern District of Washington, Local Rule CivR 7(b)(1).  This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities set forth herein, the declarations of Plaintiff Richard Sanders, the declaration of Plaintiff's counsel, Joshua H. Haffner, all concurrently filed and attached exhibits, all pleadings and documents on file in these matters, and upon such evidence and arguments as may properly come before the Court at the time of the hearing.

DATE: January 14, 2022                     **HAFFNER LAW PC**


By: /s/ Joshua H. Haffner
    Joshua H. Haffner
    Vahan Mikayelyan
    Attorney for Plaintiff
    and all others similarly situated

# TABLE OF CONTENTS

I.    INTRODUCTION. ................................................................................................ 6

II.   FACTUAL BACKGROUND. .............................................................................. 6

A.    DEFENDANT'S WASHINGTON DRIVERS ARE OVER-THE ROAD DRIVERS. ............................................................................................................... 7

B.    THE CLASS IS PAID ON A PER-MILE BASIS, WITH CERTAIN FLAT RATE ACCESSORIAL PAY. ...................................................................................... 7

C.    DEFENDANT DOES NOT PAY ITS WASHINGTON DRIVERS FOR OVERTIME OR REST BREAKS. ................................................................................ 8

D.    DRIVERS ARE ON-DUTY WHEN THEY ARE AWAY FROM HOME ON OVER-THE-ROAD TRIPS. ........................................................................................ 8

III.  LEGAL ARGUMENT. ......................................................................................... 9

A.    STANDARD FOR CLASS CERTIFICATION. ......................................................... 9

B.    WASHINGTON PUBLIC POLICY FAVORS CLASS WIDE RESOLUTION OF LABOR ISSUES. ..................................................................................................... 10

C.    PLAINTIFFS SATISFY THE REQUIREMENTS OF FRCP RULE 23(A) ................................ 10

1.    The Proposed Class Is Sufficiently Numerous And Ascertainable. ........................... 10

2.    There Are Questions Of Law And Fact Common To The Class. ........................... 11

3.    Plaintiff's Claims Are Typical Of The Proposed Class. ................................ 12

4.    Plaintiff And His Counsel Will Fairly And Adequately Represent The Interests Of The Class. ...................................................................................... 13

D.    PLAINTIFF SATISFIES THE REQUIREMENTS OF RULE 23(B). ........................................ 13

1.    Common Issues Predominate As To Each Cause Of Action. ................................. 14

A.    COMMON ISSUES PREDOMINATE AS TO PLAINTIFF'S MINIMUM WAGE CLAIM. ............................................................................................................. 14

B.    COMMON ISSUES PREDOMINATE AS TO PLAINTIFF'S CAUSE OF ACTION FOR FAILURE TO PAY OVERTIME. .................................................................. 17

C.    COMMON ISSUES PREDOMINATE AS TO PLAINTIFF'S FIRST CAUSE OF ACTION FOR FAILURE TO PAY REST BREAKS. ............................................ 19

D.    COMMON ISSUES PREDOMINATE AS TO PLAINTIFF'S FIFTH CAUSE OF ACTION FOR FAILURE TO PAY ALL WAGES AT TERMINATION, AND WILLFUL REFUSAL TO PAY WAGE. ............................................... 19

2.    A Class Action Is The Superior Method To Resolve This Dispute. ........................ 20

IV.   CONCLUSION. .................................................................................................... 22

Table of Authorities

**Cases**

*Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997)............................................9

*Anderson v. Mt. Clemens Pottery*, 328 U.S. 680 ................................................20

*Barnett v. Wal-Mart Stores, Inc.*, 133 Wash. App. 1036 (2006)...............................................................................10

*Bostain v. Food Exp., Inc.*, 159 Wash 2d 700 (2007)............................................16

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125 n.4 (9th Cir. 2017)..........................................................10

*Brown v. P.A.M. Transport, Inc.*, 2018 WL 5118449, *2 (W.D. Ark 2018)..........................................................14

*Chavez v. Our Lady of Lourdes Hospital at Pasco*, 190 Was.2d 507, 523 ................................................................9

*Dix v. ICT Group, Inc.*, 160 Wash.2d 826, 837 (2007) ........................10

*Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wash.2d 291, 300.................................................................................9

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ........................9

*Joint Exec. Bd. Of Culi-nary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152 ........................................13

*Julian v. Swift Transportation Incorporated*, 360 F.3d 932 (D.Ariz. 2018).........................................................15

*Kerr v. Sturtz Finishes, Inc.*, 2010 WL 3211946, *4 (W.D.Wash. 2010) .........................................................14

*Lopez Demetrio v. Sakuma Bros. Farms, Inc.*, 183 Wash.2d 649, 659 (2015).......................................................18

*Miller v. Farmer Bros. Co.*, 64 P.3d 49, 53 (Wash. Ct. App. 2003) ...............................................................10

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590...............................................................10

*Morgan v. Kingen*, 210 P.3d 995, 998 (Wash. Ct. App. 2009 .................................................................................19

*Rutti v. Lojack Corp.*, 2012 WL 3151077, *6 (C.D.Cal. 2012) ..............................................................19

*Stevens v. Brink's Home Security, Inc.*, 162 Wash.2d 42 (2007)................................................................13

*Stockwell v. City & Cty. of S.F.,* 749 F.3d 1107 ......................................................... 11

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036................................................ 20

*Vasquez v. Superior Court*, 4 Cal.3d 800, 808 (1971) ............................................. 9

**Other Authorities**

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (1994) .................................................................................. 10, 11

*Hannon v. Dataproducts Corp.,*
976 F.2d 497 (9th Cir. 1992) ................................................................................ 11

*In re United Energy Corp. Solar Modules Tax Shelter Investments Securities Litigation,*
122 F.R.D. 251 (N.D. Cal. 1988) .......................................................................... 12

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011)........................................................... 11

**Statutes**

FRCP Rule 23 ....................................................................................................... 10

29 C.F.R §785.22(a)……………………………………………………………… 16

PLAINTIFF'S MOTION FOR RULE 23 CLASS CERTIFICATION

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    Introduction.

This is a class action brought by Plaintiff Richard Sanders ("Plaintiff") on behalf of former and current Washington truck drivers employed Defendant Western Express, Inc. ("Defendant" or "Western").  Plaintiff seeks certification of his minimum wage, overtime and rest break claims under Washington state law.

Plaintiff satisfies the requirements of Federal Rules of Civil Procedure FRCP Rule 23(a). Common issues predominate, as Defendant's pay plan and practices are the same as to all class members.  All drivers are over-the-road drivers, and are paid on a per-mile basis, with some accessorial flat pay, but are not paid for nondriving time.  The drivers are under Defendant's control and on duty while away from home.  Defendant's common per mile pay plan results in denial of minimum wage under Washington law.  In addition, Defendant admits it does not pay class members any overtime or for rest breaks, and this is common as to all class members.  The proposed class is also sufficiently numerous, and is ascertainable. Plaintiff's claims are typical to the claims of class members as they arise out of the same pay plans, policies and procedures, and involve the same conduct by Defendant and same legal theories. Plaintiff and their counsel are well-qualified to prosecute this case and protect the interests of all class members and meet the adequacy requirement.

As set forth herein, this case is ideally suited for class treatment. The primary issue in the case is that Defendant's policy of not paying overtime or rest breaks to its drivers is unlawful under Washington law.  Defendant's practices, and the theory of liability in this case, are common as to all proposed class members.

Accordingly, for the reasons set forth herein, Plaintiff respectfully requests that the Court grant this motion and certify the proposed Class.

## II.    Factual Background.

Defendant is a trucking company employing a class of Washington drivers,

1   who do not receive overtime or rest break pay.

2   **A. Defendant's Washington Drivers Are Over-The Road Drivers.**

3   All Defendant's drivers based out of Washington are over-the-road drivers, that

4   driver interstate trips where they are away from home for days at a time.  Defendant's

5   Person Most Knowledgeable Clarence Carl Easterday, Jr. (PMK) testified as follows:

> Q. So, for this Washington class or group of Western Express
> drivers, are they over the road drivers?
> A. Every one, yes, sir."
> Q. And what does that mean?
> A. That means they pick up at one place and they deliver at
> another place and they're not local, they're not intrastate, they
> drive from state to state.
> Q. And they're on the road for days at a time?
> A. Generally, yes, sir (Declaration of Joshua H. Haffner
> ("Haffner Decl"), Exh.1 (Defendant's PMK depo.), 27:4-15.)

**B. The Class Is Paid On a Per-Mile Basis, With Certain Flat Rate Accessorial Pay.**

Defendant's PMK explained that its "drivers are paid on a . . . mileage basis and then we pay various assessorial amounts based on additional items." *Id*. at 45:21 – 46:7.  The assessorial pay is "loading, unloading, stops, tarp pay, breakdown pay, layover pay," and these assessorial payments are "flat payments." *Id*. at 46:17-24.

The earning statement from Defendant's employment record for Plaintiff reflect they were paid on a per mile basis for hauling loads for Defendant (Haffner Decl., Exh. 3, bates page WE000719.) Defendant described it as follows in response to discovery in this case:

> "Defendant pays drivers the designated mileage rate as
> compensation for completing a trip and delivering a load on
> behalf of Defendant. In order to complete the trip and deliver
> the load, the driver is required to perform various job functions,
> and the mileage pay is designed to compensate a driver for all
> hours worked by the driver performing those job functions in
> completing the trip and delivering the load (i.e., all on-duty
> time, both driving and non-driving)" (Exh. 2, (Defendant's

Response To Interrogatories), 2:22-27.)

The stubs and pay details (earning statements) also reflect assessorial payments (flat pays) (Exh. 1, Defendant's PMK depo., 61: 16-18.) The assessorial flat pay consists of loading, unloading, stops, tarp pay, breakdown pay, layover pay (*Id*. at 46:18-19.)  The gross amount reflected in the stubs or earning statements constitutes the final earning for the pay period.

Defendant's PMK testified this pay plan applies to all Washington drivers.

> Q. And is that the pay plan or structure for the entire group,
> Washington group or class of drivers we're talking about?
> A. They would fall under that.  *Id*. at 46:13-16.

Defendant's PMK admits that Defendant does not pay for non-driving time other than through the pay plan noted above.  *Id*. at 46:25 – 47:16.

## C. Defendant Does Not Pay Its Washington Drivers For Overtime Or Rest Breaks.

Defendant has a general policy that they do not pay their Washington drivers overtime compensation, even if they work over 40 hours in a week (Exh. 1, Deposition of Defendant' PMK, 134:7-9 ("Q. Does Western Express pay overtime to its drivers? A. No").)  Defendant contends its drivers are "exempt" from Washington's overtime laws. *Id*.

Defendant also does not pay for drivers' rest breaks, other than through mileage pay. *Id.* at 130:4-17.

## D. Drivers Are On-Duty When They Are Away From Home On Over-The-Road Trips.

Defendant's FRCP 30(b)(6) witness admits that Defendant's over-the-road trucker are away from home at night.

> Q. You're saying that all over the road drivers know they have
> to be away from home. Is that right?
> A. Absolutely.

> Q. Because they're over the road, they're delivering in different states and they're going to be sleeping in their sleeper birth or in a hotel or whatever, correct, away from home?
> …
> THE WITNESS: Well, that's correct. … (Exh. 1, Deposition of Defendant's PMK, 72:16-25)

Defendant's policy is that its "trucks are not supposed to be used for personal use." *Id.* at 122:6-11.  Thus, when class members are away from home on an over the road trip, they cannot drive home without authority, even when there schedule allows it.

> Q. So if someone's in California and they want to try and drive the truck home to Washington because they think they have enough time to squeeze in some time at home, is that something they would need authority to do?
> A. Correct.  *Id*. at 122:12-17.

In order to get time to go home, drivers must "communicate with their driver manager that they have a home time need and they arrange and they go home." *Id*. at 125:24 – 126:7.

Plaintiff Sanders was away from home for days at a time while delivering loads for Defendant. *Id.* at 67:19 – 68:7.

A document titled Hour of Service & IVG training produced by the Defendant lists "home time" as off duty time (Exh. 5 attached to Haffner Decl., Bates page WE000898.)

## III.    Legal Argument.

### A. Standard For Class Certification.

Federal Rule of Civil Procedure, Rule 23(a), provides that class certification is authorized when the class is so numerous that joinder of all members is impracticable, there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of those of the class, and the representative parties will fairly and adequately protect class interests. Additionally,

to maintain the class action, Rule 23 requires that the plaintiff establish that common questions of law or fact predominate and class resolution is superior to other available methods for fair and efficient adjudication of the controversy.  (Federal Rule of Civil Procedure, Rule 23(b).)  "In determining the propriety of a class action, the question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." (*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).)  Any doubt as to the propriety of certification should be resolved in favor of certifying the class. (*Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997); and *Vasquez v. Superior Court*, 4 Cal.3d 800, 808 (1971).)

**B. Washington Public Policy Favors Class wide Resolution Of Labor Issues.**

Washington's labor laws are remedial in nature, for the protection and benefit of employees, and are liberally construed to protect employees.  Washington has a "long and proud history of being a pioneer in the protection of employee rights." *Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wash.2d 291, 300.  Washington law reflects "the Legislature's concern for the health and welfare of Washington's workforce."  *Id*.  "[W]age and hour claims . . . implicate important public safety issues."  *Chavez v. Our Lady of Lourdes Hospital at Pasco*, 190 Was.2d 507, 523. Washington courts have also recognized that "class suits are an important tool for carrying out" a statute's intentions, particularly where individual claims may be small so that the class device is the only practical option.  *Dix v. ICT Group, Inc.*, 160 Wash.2d 826, 837 (2007).

**C. Plaintiffs Satisfy The Requirements of FRCP Rule 23(a)**

**1.  The Proposed Class Is Sufficiently Numerous And Ascertainable.**

The proposed class is sufficiently numerous.  As a general rule, a putative class of forty or more will be found numerous (*Miller v. Farmer Bros. Co.*, 64 P.3d 49, 53 (Wash. Ct. App. 2003) [As a general rule, where a class contains at least 40

1  members, federal courts have recognized a rebuttable presumption that joinder is

2  impracticable]). Here, there are 255 class members (Exh. 2 to Haffner Decl.,

3  Defendant's Response To Interrogatories, 2:9-12.) This satisfies the numerosity

4  requirement.

5      The Ninth Circuit has not adopted an "ascertainability" requirement.  *Briseno*

6  *v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125 n.4 (9th Cir. 2017).  Instead, the Ninth

7  Circuit has "addressed the types of alleged definitional deficiencies other courts

8  have referred to as 'ascertainability' issues … through analysis of Rule 23's

9  enumerated requirements." (*Id*.)  Where a class can be defined by reference to

10 "objective criteria," it meets the "ascertainability" requirement. (*Moore v. Ulta*

11 *Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 609 (C.D.Cal. 2015).

12     Similarly, the Court of Appeals of Washington stated that "In determining

13 whether a class is adequately defined, courts consider whether the proposed

14 definition "specif[ies] a particular group that was harmed during a particular time

15 frame, in a particular location, in a particular way and ... facilitat[es] a court's ability

16 to ascertain its membership in some *objective manner*." (*Barnett v. Wal-Mart Stores,*

17 *Inc.*, 133 Wash. App. 1036 (2006)) (Italic added).

18     Here, the Plaintiff is moving to certify a class of Washinton drivers, who

19 worked for Defendant anytime three years preceding the filing of this complaint to

20 the present.  Dckt. No. 9, FAC, ¶16.  The class is defined by objective criteria and

21 meets the ascertainability requirement.

## 2.  There Are Questions Of Law And Fact Common To The Class.

23     Certification is appropriate under the commonality prong when "there are

24 questions of law or fact common to the class." FRCP 23(a)(2). "[I]t is not

25 necessary that all question of law and fact be common." *Hanlon v. Chrysler Corp.,*

26 150 F.3d 1011, 1019 (9th Cir. 1998). Commonality may be satisfied by a single

27 common question of law or fact.  (*Id.* (stating that either "shared legal issues with

28 divergent factual predicates" or "a common core of salient facts coupled with

disparate legal remedies within the class" satisfies this criterion).) In *Wal-mart Stores v. Dukes,* the Supreme Court stated class "claims must depend upon a common contention … of such a nature that it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." (*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).)

Here, the theory of recovery and common questions of law and fact are based on the unlawfulness of Defendant's policies and practices, including its pay plan, as applicable to all Class members. Defendant only pays on a per-mile basis, with some flat pay, but fails to compensate for all on duty, nondriving time, and this results in denial of minimum wage.  Similarly, as to all class members, Defendant fails to pay overtime, despite the class working and being on duty for sufficient hours requiring overtime pay.  In addition, Defendant fails to pay the Washington class for rest breaks.  Whether Defendant's pay plan fails to properly compensate for overtime and rest breaks is a common issue of law and fact amongst all Class members.  Thus, the determination of these issues will "be so for all class members or for none; their claims rise and fall together."  (*Stockwell v. City & Cty. of S.F., 74*9 F.3d 1107, 1115 (9th Cir. 2014).)  Accordingly, this action satisfies commonality under section 23(a)(2).

### 3.  Plaintiff's Claims Are Typical Of The Proposed Class.

For typicality to exist, class representative plaintiffs must have claims "reasonably co-extensive with those of absent class members," but need not be "substantially identical."  *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1994). The test is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  (*Hannon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992).)

Here, Plaintiff's claims arise out of the same pay plans, policies and

procedures, and involve the same conduct by Defendant and same legal theories. Thus, the typicality requirement is met.

### 4. Plaintiff And His Counsel Will Fairly And Adequately Represent The Interests Of The Class.

The adequacy of representation requirement has two elements: "(1) that the representative's party's attorney be qualified, experienced and generally able to conduct the litigation; and (2) that the suit is not collusive and plaintiff's interests are not antagonistic to those of the remainder of the class." *In re United Energy Corp. Solar Modules Tax Shelter Investments Securities Litigation,* 122 F.R.D. 251, 257 (N.D. Cal. 1988). *See also Rodriguez v. Carlson,* 166 F.R.D. 465, 473 (E.D. Wash. (1996). Both requirements are met here.

As to the first requirement, Class counsel has an extensive track record litigating class action. (Haffner Decl., ¶¶4-7.) With regard to Plaintiff, he will fairly and adequately protect the interests of class members (Sanders Decl., ¶ 10.) Their interests are not antagonistic to members of any of the proposed classes and they understand their role as class representatives and are willing to act as class representatives.

In sum, Plaintiff and their counsel are well-qualified to prosecute this case and protect the interests of all class members and meet the adequacy requirement.

### D. Plaintiff Satisfies The Requirements Of Rule 23(b).

In addition to the prerequisites set forth in Rule 23(a), a class must also constitute one of the types of classes under Rule 23(b). Under Rule 23(b)(3), certification is appropriate if: (i) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. (*Local Joint Exec. Bd. Of Culi-nary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162-63 (9th Cir. 2001).) As set forth below, this case meets the requirements for certification under Rule 23(b).

**1. Common Issues Predominate As To Each Cause Of Action.**

Plaintiffs' claims will be proven by predominantly common evidence.

**a. Common Issues Predominate As To Plaintiff's Minimum Wage Claim.**

Common issues predominate as to whether Plaintiff and the Class were on duty while away from home on an over-the-road trip for Defendant, such that it was "hours worked" under Washington law which must be compensated.

Under Washington law, hours worked "mean[s] all hours during which the employee is authorized or required . . . to be on duty on the employer's premises or at a prescribed work place." WAC 296-126-002(8).

In *Stevens v. Brink's Home Security, Inc.*, 162 Wash.2d 42 (2007), the Washington Supreme Court addressed "whether [employees] drive time constitutes hours worked within the meaning of MWA." *Id*. at 47. The analysis requires that courts "evaluate the extent to which [employer] restricts [employees] personal activities and controls [employee's] time to determine whether [employees] are 'on duty' for purposes of WAC." *Id*. at 48. *Stevens* found that drivers were on duty during commutes in a company truck, largely because the employer's "company policy strictly controls [the employee's] use of the [employer's] trucks, specifically mandating that they use the trucks 'for company business only,'" and prohibiting employees from using the truck for personal purposes, like "shopping." *Id*. at 48. Similarly, in *Stevens*, the location of the truck is the "prescribed work place" for purposes of compensation. *Id*. at 49 ("we hold that the [employer's] trucks constitute a 'prescribed work place' under WAC 296-126-002(8)").

Here, as in *Stevens*, Plaintiff and class members are prohibited from using trucks while on over-the-road trips for personal purposes (Exh. 1 Deposition of Defendant's PMK), 122:6-11 ("trucks are not supposed to be used for personal use"). Indeed, drivers "need authority" to drive Defendant's truck home. *Id*. at

122:12-17. These are common policies instituted by Defendant restricting Plaintiff and other driver's activity, and controlling their time, when they are away from home on trips for Defendant. Whether the time drivers are on over-the-road trips for Defendant is hours worked under *Stevens*, presents a predominantly common question based on Defendant's common policies.

Moreover, "[w]hen interpreting the MWA, Washington courts look to FLSA and federal regulations implementing it." *Kerr v. Sturtz Finishes, Inc.*, 2010 WL 3211946, *4 (W.D.Wash. 2010). Federal labor regulations provide as follows:

> "Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked." 29 C.F.R §785.22(a).

Multiple recent cases have found that truck drivers are subject to this regulation, and that this means that drivers hauling over-the-road are on duty for 24 hours or, if there is an agreement to exclude meal and sleep time from on duty hours, than 16 hours. Thus, in *Brown v. P.A.M. Transport, Inc.*, 2018 WL 5118449, *2 (W.D. Ark 2018), the Court found that, under section 785.22(a), "when an employee is required to be on duty for 24 hours, his employer must pay him for at least 16 of those hours, even if he has spent more than 8 hours sleeping and eating during that 24-hour period." (*Id.* at *2.) Similarly, in *Julian v. Swift Transportation Incorporated*, 360 F.3d 932 (D.Ariz. 2018), the Court found – as to this same Defendant – that "truck drivers, just like all other employees, are subject to § 785.22 when they are on duty for 24 hours or more." (*Id.* at 952.) Finally, in *Woolridge v. Gateway Transp. of Georgia, Inc.*, 2019 WL 2610904, (N.D. Ga. 2019), the Court, citing Section 785.22(a), held as follows:

"Given that Defendant's practice was to pay wages to Plaintiff on a per-mile basis, and Defendant did not ensure that those wages met or exceeded the minimum wage when divided by all of the hours Plaintiff worked each workweek, the wages he received frequently fell short of the minimum wage when dividing all weekly wages paid by all weekly hours worked under the FLSA." (*Id*. at \*5.)

Here, Defendant has no agreement with its drivers to exclude meal or sleep time from on duty time under section 785.22(a) (Sanders Decl., ¶6.) Thus, Defendant's drivers were working under section 785.22(a) for all 24 hours while hauling loads over the road. Moreover, even if there was an agreement to exclude meal or sleep time from hours worked (and there is not in Defendant'), Defendant's drivers are still on duty for a minimum of 16 hours per day while over-the-road. Under either scenario, Defendant's drivers are still not being paid minimum wage because non-driving time is not compensated under Defendant's per-mile pay plan.

Plaintiffs' case demonstrates the minimum wage violation. Thus, as an example, from March 8, 2020 through March 14, 2020, Plaintiff Sanders was on the road and away from home, and thus needed to be paid minimum wage for non-driving hours per section 785.22 (Exh. 3 to Haffner Decl., bates page WE0000719, WE000021.) Plaintiff, however, was paid a per-mile driven basis, and earned only $583.96 for that week, which is $3.47 per hour if she was working 24 hours per day, and 5.21 per hour if Plaintiff was on duty 16 hours per day (*Id.*) The class of drivers in this case are away from home for days at time (Exh. 1, Deposition of Defendant's PMK, 36: 11, 16, 21-25.) Defendant's per-mile, plus assessorial pay plan is a common pay plan applicable to all proposed class members, and denies them minimum wage in the same way, by failing to pay for majority of non-driving time. Defendant's drivers were denied minimum wage because Defendant's per-mile pay plan fails to compensate for non-driving time, although these are hours worked for trips exceeding 24 hours under section 785.22.

///

### b. Common Issues Predominate As To Plaintiff's Cause Of Action For Failure To Pay Overtime.

Common issues predominate with respect to Plaintiff's overtime claim under RCW 49.46.130.  Dckt. No.9, FAC, ¶¶40-44 (fourth cause of action).

Under Washington law, "no employer shall employ any of his or her employees for a workweek longer than forty hours unless such employee receives compensation for his or her employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he or she is employed."  RCW 49.46.130(1).

Washington drivers are entitled to overtime under Washington law, whether driving inside or outside of Washington.  In *Bostain v. Food Exp., Inc.*, 159 Wash 2d 700 (2007), the Washington Supreme Court held that Washington drivers are entitled to "overtime based on all hours worked, whether within Washington State or outside the state."  *Id*. at 705.  Just as in this case the driver in *Bostain* was an interstate driver, and was primarily paid "by the mile . . . [and] was never paid overtime."  *Id*. at 706-707.  The *Bostain* Court explained as follows:

> "By definition, an interstate trucker will spend some hours driving outside Washington State.  RCW 49.46.130(1) requires overtime compensation for interstate truck drivers.  The statute makes no distinction between the hours spent driving in state and those spent driving outside Washington."  *Id*. at 705-706.

*Bostain* stated "the statute mandates that truck drivers must obtain extra compensation for hours worked over 40 hours per week . . . [and] the Legislature recognized that truck drivers are subject to the overtime provisions of RCW 49.46.130(1) even though they spend part of their time engaged in interstate transportation."  *Id*. at 710.  *Bostain* concluded that "all hours of work must be considered, whether worked within this state or not, when determining overtime due a Washington employee."  *Id*. at 713.

Here, Defendant has a general policy that they do not pay their Washington drivers overtime compensation, even if they work over 40 hours in a week (Exh. 1,

1  Deposition of Defendant's PMK, 134:7-9, ("Q.  Does Western Express pay overtime

2  to its drivers? A. No").)  Defendant contends that its Washington drivers are

3  "exempt" from overtime *Id*.  This is incorrect under Washington law.  *Bostain*,

4  *supra*, 159 Wash 2d  at 717 ("the MWA unambiguously requires that overtime be

5  paid to a Washington employee on all hours worked").  More importantly, the issue

6  of whether drivers are exempt from Washington's overtime law is a common legal

7  issue applicable to all class members, and ideally suited for class treatment.

8        Plaintiff has two overtime violation theories:  (1) Plaintiff asserts (similar to

9  his minimum wage claim) that he and class members were on duty 24 hours a day

10  when away from home, and that Defendant is required to pay overtime for those

11  hours that exceed 40 per week; and (2) alternatively, Plaintiff asserts, even if they

12  are not on duty 24 hours a day when away from home, Plaintiff and class members

13  have an overtime claim for time logged in the DOT logs as "on duty" or "on duty

14  not driving" or "driving," that exceeded 40 hours per week.[1]

15        Both overtime theories are based on Defendant's records.  Thus, Defendant's

16  records reflect when Plaintiff and class members were away from home on over-the-

17  road trips (Exh. 1, Deposition of Defendant's PMK, 73:13-17.)  Because drivers are

18  admittedly on the road for days at a time, they were clearly working in excess of 40

19  hours per week under Plaintiff's theory that time away from home on trips is on

20  duty time.  Similarly, the DOT logs maintained by Defendant for Plaintiff and its

21  other drivers reflect the time each driver logged as "on duty" or "on duty not

22  driving."  (Haffner Decl., Exh. 6; and Exh. 1, Deposition of Defendant's PMK,

23  42:16-22, 94:5-13.[2])  In this case, Plaintiff's DOT logs reflect that for multiple

24

25  _____

26  [1] This second theory involves hours that are a subset of the hours at issue under the
    first theory and, thus, the second theory would result in less overtime hours.

27  [2] Defendant's DOT logs reflect when Plaintiff and other drivers were logged as
28  "driving," "on duty not driving," "sleeper berth," or "off duty." Exh. 1, Deposition of
    Defendant's PMK), 94:5-13.

weeks, Plaintiff was logged as driving or on duty not driving for more than 40 hours per week (Sanders Decl., ¶ 8).  For example, from March 15, 2020 through March 21, 2020, time logged in the DOT logs as "on duty" or "on duty not driving" or "driving" for Plaintiff Sanders was over 40 hours, particularly he worked for 50.08 hours for that period (Exh. 6 to Haffner Decl., bates page WE000393-WE0000403). From May 10, 2020 through May 16, 2020, time logged in the DOT logs was 47.08 hours for that period (Exh. 6, bates page WE000336-WE0000346). From June 26, 2020 through August 1, 2020, time logged in the DOT logs was 56.61 hours for that period (Exh. 6, bates page WE000260-WE0000269).

Plaintiff's cause of action for failure to pay overtime will be proven by predominantly common evidence.

### c.   Common Issues Predominate As To Plaintiff's First Cause Of Action For Failure To Pay Rest Breaks.

Common issues also predominate as to Plaintiff's rest break claim. "[E]mployers must pay a wage separate from the piece rate for time spent on rest breaks." *Lopez Demetrio v. Sakuma Bros. Farms, Inc.*, 183 Wash.2d 649, 659 (2015).

Here, Defendant has a common policy of not paying separately for rest breaks, and only compensating for rest breaks through Defendant's piece-rate, per mile pay (Exh. 1, Deposition of Defendant's PMK, 130:4-17.)  This claim is ideally suited for class treatment.

### d.   Common Issues Predominate As To Plaintiff's Fifth Cause Of Action For Failure To Pay All Wages At Termination, And Willful Refusal To Pay Wage.

Plaintiff's claims for failure to pay wages at termination, and willful refusal to pay wages, are predicated on the claims for minimum wage and overtime set forth above.  Therefore, they involve the same predominantly common questions.

With respect to any additional issues raised by these claims, they too can be

1   resolved based on predominantly common evidence.  Thus, the test for willfulness

2   in failing to pay wages is the employer's volitional refusal to pay. Willful means

3   'merely that the person knows what he is doing, intends to do what he is doing, and

4   is a free agent (*Morgan v. Kingen*, 210 P.3d 995, 998 (Wash. Ct. App. 2009).

5        Because Defendant's policy, and claimed failure to pay wages, was the same

6   as to all class members, the question of whether Defendant's conduct was willful or

7   not will likewise apply to all class members.

8        Common issues predominate as to these claims[3].

9        **2.  A Class Action Is The Superior Method To Resolve This**

10       **Dispute.**

11       Class treatment is superior "whenever the actual interests of the parties can be

12   served best by settling their differences in a single action."  (*Hanlon*, *supra*, 150

13   F.3d at 1022.)  In cases involving employment matters like the ones at issue here,

14   Courts recognize that a class action is superior, as the alternative to a class case is

15   often no case at all. "[C]ourts have consistently recognized that the 'fear of

16   economic retaliation' will force workers 'quietly to accept substandard conditions,'

17   dissuading employees from participating in lawsuits against their employers." (*Rutti*

18   *v. Lojack Corp.*, 2012 WL 3151077, *6 (C.D.Cal. 2012).)  Here, given the common

19   issues and interests of the Class, a class action is clearly superior.

20       Further, while it is unnecessary to adopt a specific trial plan now, Plaintiffs

21   submit that this case may proceed along a well-recognized path.  Defendant's

22   classwide liability will be established either at summary judgment or at trial based

23   on the common evidence of the pay plan applicable to all Class members, and

24   Defendant's common practices of not paying for time drivers are away from home

25   on an over-the-road trip, but are not driving.  Indeed, because the pay plan and its

26   application were admittedly the same (non-driving time away from home is not

27

28   [3] Plaintiff is not seeking to certify his sixth cause of action for violation of
    Washington's Consumer Protection Act.

compensated), the liability case will not be complex, and will be wholly manageable.

As to damages, they can be proven through Defendant's records, presentation of expert testimony and data, as well as class member testimony. With respect to rest breaks, the calculations will be based on calculating the number of qualifying shifts for rest breaks, and multiplying that by the driver's regular rate of pay. As to minimum wage and overtime, the damages will be proven through Defendant's records reflecting the f days its drivers are away from home (Exh. 1, Deposition of Defendant's PMK, 73:13-17 ("Q. Western Express has records of when the drivers were away from home on trips and for how long based on the driver logs. Correct? A. That would be information that was discernible if it mattered to us, yes").)  The number of hours in those days are multiplied by the applicable minimum or overtime rate, any compensation paid to the class member for that pay period (mileage pay or assessorial pay) is subtracted, and the remainder is the damage claim for that pay period.  To the extent Defendant failed to maintain such records, representative evidence including employee testimony and statistical evidence are appropriate forms of testimony so that employees will have a means of proving their claims (*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046; *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 687-88 (1946).)

The straightforward relief sought (wage calculations), and evidence regarding the same, is markedly less complicated than many other class actions that have been deemed manageable. This case is well-suited for class treatment.

///

///

///

///

///

PLAINTIFF'S MOTION FOR RULE 23 CLASS CERTIFICATION

**IV.    Conclusion.**

        For the reasons stated above, the Court should grant Plaintiff's Motion for Certification of Class Action, designate Plaintiff Richard Sanders as the lead Plaintiff and appoint Joshua H. Haffner and Vahan Mikayelyan of Haffner Law PC as counsel for the Class.

DATE: January 14, 2022                                    **HAFFNER LAW PC**


                                                By: /s/ Joshua H. Haffner
                                                    Joshua H. Haffner
                                                    Vahan Mikayelyan
                                                    Attorneys for Plaintiff
                                                    and all others similarly situated