FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 01, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RICHARD SANDERS,<br><br>    Plaintiff,<br><br>    v.<br><br>WESTERN EXPRESS, INC.; and DOES 1 through 10, inclusive,<br><br>    Defendants. | No. 1:20-CV-03137-SAB<br><br>**ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT** |

    Before the Court is Defendant Western Express, Inc.'s Motion for Summary Judgment, ECF No. 43. The motion was heard without oral argument. Plaintiff Richard Sanders is represented by Joshua H. Haffner and Vahan Mikayelyan. Defendant Western Express, Inc. ("Western") is represented by Adam C. Smedstad, James Anthony Eckhart, and James T. Spolyar.

    The case is about Western's alleged failure to pay wages to Mr. Sanders, a former employee of Western, and similarly situated over-the-road truck drivers. Mr. Sanders is a Washington resident and asserts claims under state and federal law; Western now moves for summary judgment on all claims. The Court grants summary judgment on Mr. Sanders' state law claims, because Mr. Sanders is not a Washington-based employee for purposes of the state Minimum Wage Act and Tennessee law applies. Summary judgment is denied as to the federal claim, as there exists a genuine dispute of material fact.

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT \* 1

**Facts**[1]

Western is a for-hire motor carrier authorized by the Federal Motor Carrier Safety Administration ("FMCSA") to provide trucking services to the shipping public nationwide. Western transports freights for its customers throughout the continental United States and parts of Canada. It has approximately 2,400 to 2,500 drivers throughout the United States. Mr. Sanders was an employee for Western between December 2019 and August 2020.

Mr. Sanders is a Washington resident currently living in Ellensburg, Washington. He has a Washington state driver's license, which he used for his period of employment with Western. While Western claims that none of its drivers are based in Washington, it has employees who reside in Washington, such as Mr. Sanders. Between September 1, 2017 and May 5, 2021, Western had 255 current or former drivers that reside or resided in the State of Washington.

Prospective employees for Western apply by accessing Western's website and submitting an online application. Mr. Sanders submitted an application for employment with Western online while in Washington. Western sent Mr. Sanders a bus ticket from his home in Ellensburg to attend a 3-day orientation in Bloomington, California. Before the orientation began, Mr. Sanders signed a conditional employment offer letter. At some point, he also signed an official employment offer letter.

As a Western employee, Mr. Sanders operated a commercial motor vehicle that had a gross vehicle weight rating in excess of 10,000 pounds and hauled freight in interstate commerce. He picked up loads in Washington on several occasions; approximately 8% of his driving time was in the state. Mr. Sanders regularly

---

[1] These facts can be found in the parties' respective statements of material facts, submitted pursuant to Federal Rules of Civil Procedure 56 and Local Civil Rule 56.1(c)(1). ECF Nos. 43-1, 47-1, 49-1.

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT ~ 2

received work assignments and submitted payroll information remotely through the computer in his truck and on his phone while in Washington. All paystubs from Western listed Mr. Sanders' home address in Washington. Mr. Sanders' driver manager worked outside of Washington. For multiple weeks, Mr. Sanders was logged as driving or on-duty driving for more than 40 hours a week.

Western is incorporated and headquartered in Tennessee. Western's executives live and work in Tennessee; Western does not employ any executives or managers in Washington. Western manages all operations and makes all decisions regarding company policies at its headquarters in Tennessee.

Western does not conduct orientation for employees in Washington. Western Express has no recurring dedicated routes in Washington and has little business in the state. It does not maintain any terminals, administrative offices, or facilities in Washington—nor does it own property or have bank accounts in the state. None of Western's dispatchers work in Washington. In the period between September 2017 and August 2020, Western's driver fleet drove 72.8% of its miles east of the Mississippi River. Between September 2017 to August 2020, the driver fleet drove only 0.4% of their miles in Washington.

Drivers for Western drive irregular routes; they pick up from a shipper and deliver to the destination. Drivers are away from home for days at a time and often sleep in a sleeper berth[2] or hotel. Drivers need authority from Western to go home on their downtime. They are not permitted to use trucks for personal reasons.

Western pays its drivers on a per-mile driven basis. It pays drivers the designated mileage rate as compensation for completing a trip and delivering a load on its behalf. To complete the trip and deliver the load, the driver is required to perform various job functions. Western asserts that the mileage pay is designed to

---

[2] As the name reflects, a "sleeper berth" is a room behind the cab of a truck with a bed.

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT * 3

compensate a driver for all hours worked. Western's pay stubs and pay details also reflect assessorial (or flat) payments for loading, unloading, stops, tarp pay, breakdown pay, and layover pay, and the gross amount reflected in the stubs or earning statements constitutes the final earning for the pay period. Western does not compensate for off-duty time or overtime.

During Mr. Sanders' employment, Western required Mr. Sanders to abide by the FMCSA's hours of service regulations. Accordingly, an Electronic Logging Device automatically recorded all of Mr. Sanders' driving time. Non-driving time was logged as either (1) on-duty not driving, (2) sleeper berth, or (3) off-duty. Mr. Sanders would log time as off duty, or in the sleeper berth, while away from home and on the road for over 24 hours. Mr. Sanders was not subject to call by Western to respond to emergencies while in the sleeper berth, and Western did not interrupt Mr. Sanders' time in the sleeper berth. Mr. Sanders controlled his own schedule subject only to the hours-of-service regulations and customer delivery times.

Mr. Sanders has testified that while on long haul trips–whether in off-duty or sleep berth mode—he was unable to use his time effectively for his own purposes. Specifically, he claims he was unable to use his time for most of his personal needs as if he was off duty at home, such as going to the doctor or getting together with friends.

Crucially, the parties dispute whether Mr. Sanders was responsible for his truck and trailer while he was on off-duty time. Mr. Sanders asserts he was solely responsible for his truck and the contents of his trailer. Mr. Sanders claims that he spent the night in a hotel only once, when work was being performed on his truck. As a result, he claims he was not free to do as he wished during his off-duty time. Meanwhile, Western claims that it did not require him to stay with the truck and that he could park his truck in a safe location, leave the truck alone, and do whatever he pleased during his off-duty time.

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT * 4

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

**Discussion**

Western moves for summary judgment on all of Mr. Sanders' claims. Mr. Sanders brings seven causes of action. First, Mr. Sanders alleges that Western violated federal law by failing to pay employees the federal minimum wage for "non-driving time" (but rather, only paying drivers on a per-mile basis), in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* This

cause of action is referred to the 24-hour on-duty claim. Mr. Sanders' remaining causes of action sound in state law: (2) failure to pay employees' rest breaks (but rather, only paying drivers on a per-mile basis), in violation of Wash. Admin. Code § 296-126-092(4), (3) failure to pay employees the state minimum wage for "non-driving time," in violation of the Minimum Wage Act ("MWA"), Wash. Rev. Code §§ 49.46.020, 49.46.120, (4) failure to provide all wages and benefits of employment owed, in violation of Wash. Rev. Code § 49.52.050, (5) failure to pay overtime for a workweek longer than 40 hours, in violation of the MWA, Wash. Rev. Code § 49.46.130, (6) failure to pay all wages due to an employee at termination of employment, in violation of Wash. Rev. Code § 49.48.010, and (7) by the five previous allegations, violation of the Washington Consumer Protection Act ("CPA"), Wash. Rev. Code § 19.86.010 *et seq*. The Court considers Mr. Sanders' federal and state law claims in turn.

## A. <u>Fair Labor Standards Act Claim</u>

Western first argues it is entitled to summary judgment on Mr. Sanders' 24-hour on-duty claim under the FLSA. Mr. Sanders alleges that he and putative class members were not paid the federal minimum wage, which requires employers to pay employees at least $7.25 per hour, due to Western's practice of only compensating drivers on a per-mile basis. Mr. Sanders claims the per-mile policy did not adequately compensate him, because he was actually "on duty" for 24 hours during over-the-road trips and his time in the sleeper berth. Conversely, Western asserts Mr. Sanders was not required to work while off duty or in the sleeper berth of his truck during overnight trips. Since Mr. Sanders was not entitled to compensation for 24 hours a day every day that he was working over-the-road, Western claims he was not underpaid.

The parties focus on two regulations: 29 C.F.R. § 785.22(a) and 29 C.F.R. § 785.41. Mr. Sanders stresses the former regulation, which provides:

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT * 6

> Where an employee is required to be on duty for 24 hours or more the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked.

29 C.F.R. § 785.22(a). Western emphasizes the latter regulation, given its specificity to truck drivers:

> Any work which an employee is required to perform while traveling must, of course, be counted as hours worked. An employee who drives a truck, bus, automobile, boat or airplane, or an employee who is required to ride therein as an assistant or helper, is working while riding, except during bona fide meal periods or when he is permitted to sleep in adequate facilities furnished by the employer.

29 C.F.R. § 785.41 (emphasis added).

The FLSA requires employers to pay most employees a regular hourly rate for up to 40 hours a week and overtime compensation at a rate of one and one-half times the regular rate for hours worked in excess of 40. 29 U.S.C. §§ 206, 207(a)(1). "Under certain conditions an employee is considered to be working even though some of his time is spent in sleeping or in certain other activities." 29 C.F.R. § 785.20. To determine whether an employee is considered "working" in this context, a court must consider whether the employee is "engaged to wait," which is compensable time, or "waiting to be engaged," which is not compensable time. *See id.* § 785.14–.16; *Skidmore v. Swift Co.*, 323 U.S. 134, 137 (1944).

Some district courts have found that Section 785.22(a) is primarily applicable to truck drivers when they are on duty for 24 hours or more; again, Section 785.22(a) requires employers to pay truck drivers for at least 16 hours of work, even if the employee has spent more than 8 hours sleeping and eating during that 24-hour

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT * 7

1  period. *Brown v. P.A.M. Transport, Inc.*, No. 5:16-CV-5366, 2018 WL 5118449, *2
2  (W.D. Ark. Oct. 19, 2018) (finding Section 785.22(a) applicable); *Julian v. Swift*
3  *Transportation Inc.*, 360 F.Supp.3d 932, 952 (D. Ariz. 2018) (same); *Woolridge v.*
4  *Gateway Transp. of Georgia, Inc.*, No. 4:19-CV-0053-HLM-WEJ, 2019 WL
5  2610904, *5 (N.D. Ga. June 24, 2019) (same). However, other courts have found
6  just the opposite—that Section 785.41 strictly applies and off-duty time or rest time
7  in the sleeper berth is not compensable under the FLSA. *Blodgett v. FAF, Inc.*, 446
8  F. Supp. 3d 320, 328 (E.D. Tenn. 2020); *Kennedy v. LTI Trucking Servs., Inc.*, No.
9  4:18-CV-230 (HEA), 2019 WL 4394539, at *3 (E.D. Mo. Sept. 13, 2019); *Petrone*
10 *v. Werner Enters., Inc.*, No. 8:11-CV-401, 2017 WL 510884, at *6 (D. Neb. Feb. 2,
11 2017); *Nance v. May Trucking Co.*, No. 3:12-CV-01655 (HZ), 2014 WL 199136, at
12 *8 (D. Or. Jan. 15, 2014), *aff'd in relevant part*, 685 F. App'x 602 (9th Cir. 2017).

13     Resolution of the 24-hour on-duty claim is inappropriate on summary
14 judgment because there is a dispute of material fact. The parties dispute whether Mr.
15 Sanders was responsible for his truck and the contents of his trailer while he was
16 "off duty." Mr. Sanders claims he was solely responsible for his truck and the
17 contents of his trailer during this time; meanwhile, Western argues his job did not
18 require him to stay with his truck or trailer to monitor it, and he could leave at any
19 time, provided he parked it in a safe location. The evidence submitted on this issue
20 is inconclusive.

21     The Court need not decide the exact scope and applicability of the regulations
22 today, because under either regulation, the Court must first determine whether Mr.
23 Sanders and similarly situated truck drivers were relieved of all duties during "off-
24 duty" time or time in the sleeper berth. Under 29 C.F.R. § 785.14, the Court must
25 consider whether an employee is "engaged to wait" or "waiting to be engaged."
26 Whether Mr. Sanders was responsible for the truck during off-duty and/or sleeper
27 berth time, and whether he was required to stay with the truck and monitor it, is
28 material to determining whether the time is compensable under the FLSA.

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT * 8

Construing the facts in the light most favorable to Mr. Sanders, this dispute of material fact precludes summary judgment on the 24-hour on-duty claim.

## B. Washington State Claims

Western next argues it is entitled to summary judgment on Mr. Sanders' state law claims because Washington law does not apply to the parties' employment relationship. It argues the parties' employment contract provides that Tennessee law governs. Western also argues that choice of law factors weigh against applying Washington law to Mr. Sanders' claims—for example, Western argues its only connection to Washington is that Mr. Sanders (and some other employees) reside in the state and worked there for a small period of the time.

Mr. Sanders contends that summary judgment should be denied because Washington law governs. He argues that application of Tennessee law would violate Washington public policy, and therefore, the governing law provision in the parties' contract is unenforceable. Mr. Sanders also asserts that, notwithstanding the parties' express choice of law, Washington law applies to his statutory claims because he is a "Washington-based" employee as envisioned by *Bostain v. Food Exp. Inc.*, 159 Wash.2d 700, 713, 153 P.3d 846 (2007).

### 1. Whether the choice of law provision is enforceable.

As a threshold matter, the Court must determine what source of law governs the parties' employment contract. When a federal court sits in diversity, it must apply the forum state's conflict of laws principles. *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 610 (9th Cir. 2010). As the Court sits in diversity in this case, Washington choice of law principles apply. *See Bostain*, 159 Wash.2d at 713 n.5.

Washington courts use a two-step approach to conflict of laws issues. *Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 550 (W.D. Wash. 2008). First, a court must determine whether there is an "actual conflict between the laws or interests of Washington and the laws or interests of another state[.]" *Seizer v. Sessions*, 132 Wash.2d 642, 648, 940 P.2d 261 (1997) (citing *Burnside v. Simpson Paper Co.*, 123

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT * 9

Wash.2d 93, 100–01, 864 P.2d 937 (1994)). When the result of the issues is different under the law of the two states, there is an actual conflict. *Id.* If not, the situation is known as a "false" conflict, and the court's inquiry ends. *Id.*

Second, if an actual conflict exists, the court looks to the parties' express choice of law. Washington courts generally enforce choice of law provisions in contracts. *McKee v. AT&T Corp.*, 164 Wash.2d 372, 384, 191 P.3d 845 (2008) (citing *Erwin v. Cotter Health Ctrs.*, 161 Wash.2d 676, 695–96, 167 P.3d 1112 (2007)). In this case, Mr. Sanders signed two employment contracts, which provided that Tennessee law governs the employment relationship.

However, a court will disregard a contract provision and apply Washington law if, among other things, application of the chosen law would be contrary to the fundamental policy of Washington. *Id.* Three conditions must be met under this scenario—first, without the provision, Washington law would apply; second, the chosen state's law violates a fundamental public policy of Washington; and third, Washington's interest in the determination of the issue materially outweighs the chosen state's interest. *Id.* (citing *Erwin*, 161 Wash.2d at 694–95); *Brown v. MHN Government Servs., Inc.*, 178 Wash.2d 258, 263, 306 P.3d 948 (2013).

Here, resolution of Mr. Sanders' claims is different under Washington and Tennessee law, and there is an actual conflict between the laws of Washington and Tennessee. While Washington guarantees a minimum wage of $11.00 to $13.50 during the class period, Tennessee has no minimum wage, and thus, applies a federal minimum wage of $7.25. *Compare* Wash. Rev. Code § 49.46.020 *with* Tenn. Ann. Code § 50-2-103. In addition, while Washington guarantees overtime pay to employees, Tennessee does not. *Compare* Wash. Rev. Code § 49.46.130(1) *with* Tenn. Ann. Code § 50-2-103. These variations in state law could change the outcome of Mr. Sanders' minimum wage and overtime claims, and therefore, an actual conflict exists.

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT ~ 10

As noted, the parties' contracts contain governing law provisions. On December 9, 2019, Mr. Sanders signed a conditional employment offer with Western, which states that Mr. Sanders' "employment will be governed exclusively by Tennessee law and resolved in Tennessee, except to the extent mandated by federal law." ECF No. 43-2 at 8. Two days later, Mr. Sanders signed a formal employment offer letter. Mr. Sanders signed his initials next to a paragraph labeled "Employment Location," which provides, among other things, "I understand and agree that any employment relationship between myself and Western Express, Inc. is and was determined and made in the State of Tennessee." ECF No. 43-2 at 10. By the parties' express agreement, then, Tennessee law governs Mr. Sanders' employment relationship with Western.

Since the parties' contract includes a choice of law provision, the Court should apply the selected forum's law unless its application would violate state public policy. In this case, Mr. Sanders argues that application of Tennessee law would violate Washington's public policy. Again, to disregard the choice of law provision on this basis, the Court must find three factors exist: (1) Washington law would otherwise apply, (2) the chosen law would violate Washington's fundamental public policy, and (3) Washington's interest in the determination of the issue materially outweighs the chosen state's interest. *McKee*, 164 Wash.2d at 384.

The Court finds that the parties' choice of law is enforceable, because notwithstanding the provision, Washington law would not apply to this case. Washington has an insufficient relationship to the parties and the employment contract to invalidate the choice of law provision; indeed, the state has hardly any relationship at all.

To assess the first condition under the public policy exception—whether Washington law would otherwise apply—the Court applies the "most significant relationship" test as enumerated in the Restatement (Second) of Conflict of Laws § 188 (1971). *See McKee*, 164 Wash.2d at 384. Courts weigh the relative importance

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT ~ 11

to the issue of (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance of the contract, (4) the location of the subject matter of the contract, and (5) the domicile, residence, or place of incorporation of the parties. *Id.* (citing RESTATEMENT § 188).

The Section 188 factors do not militate in favor of applying Washington law. First, the place of official contracting—*i.e.*, where the employment document was signed—was California, where Mr. Sanders attended orientation. Similarly, negotiation of the contract, if there was any actual negotiation, occurred in the same place. Neither the first nor second elements have any relationship to Washington or Tennessee.

Admittedly, most of the remaining elements are unhelpful to the present situation, because Mr. Sanders and putative class members are over-the-road truck drivers. The place of performance of the contract and location of the subject matter of the contract are nationwide, given the nature of Mr. Sanders' profession. These factors bear "little weight in the choice of the applicable law," because Mr. Sanders' contractual performance was "divided more or less equally among two or more states[.]" RESTATEMENT § 188, cmt. e. Given that Mr. Sanders drove less than 8% of his time in Washington, the state has far less weight than where performance is split evenly between two or three states. The place of performance and location of the contract subject matter do not weigh in favor of applying Washington law.

The remaining factors are split between Washington and Tennessee: Mr. Sanders is domiciled in Washington, while Western is incorporated and headquartered in Tennessee.

No party contends that California law governs the parties—yet, given the Section 188 factors alone, it appears that California has a more substantial relationship to the employment agreement than Washington. While only one party is domiciled in Washington, the contract was both executed and arguably negotiated in California.

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT \* 12

Due to this, the Court cannot find that Washington law would apply absent the parties' choice of law. Washington does not have the most obvious relationship to the agreement, and the parties could not have reasonably expected Washington law to govern. This finding is fatal to application of the public policy exception.

Mr. Sanders has failed to demonstrate that an exception to the general rule that governing law provisions are enforceable is applicable to this case. Thus, the Court must apply the parties' choice of law. *McKee*, 164 Wash.2d at 384. The parties' selection of Tennessee law bars Mr. Sanders' employment claims that sound in Washington law. *See, e.g.*, *Dri-Eaz Prod., Inc. v. Allen*, No. C12-1638-RSM, 2013 WL 12108076, at *3 (W.D. Wash. Jan. 4, 2013); *Ins. Auto Auctions, Inc. v. Indian Harbor Ins. Co.*, No. C09-1522RAJ, 2010 WL 11688494, at *2 (W.D. Wash. Sept. 16, 2010).

### 2. Whether Mr. Sanders is a Washington-based employee.

Notwithstanding the above, Mr. Sanders also argues that the parties' choice of law is inconsequential to his state causes of action, because the contractual provision makes no reference to state statutory claims. Western responds that, even if the provision is read narrowly to exclude statutory claims, Mr. Sanders can only recover under Washington law if he is a Washington-based employee.

In this case, the Court concludes that Washington employment law does not govern because Mr. Sanders is not a "Washington-based" employee as defined by the framework in *Bostain*. Whether a court should apply Washington employment laws depends on traditional choice of law principles. *See Bostain*, 159 Wash.2d at 713, n.5. In addition to the choice of law analysis conducted above, the Court holds that Mr. Sanders is not a Washington-based employee under the *Bostain* framework, and as a result, Mr. Sanders' statutory claims fail.

In *Bostain*, the Washington Supreme Court found that employers must pay Washington-based interstate truck drivers overtime pay, notwithstanding the number of hours worked within the state's borders. 159 Wash.2d at 710. Mr. Sanders argues

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT * 13

that *Bostain* stands for a broader principle that over-the-road truck drivers who reside in Washington are "Washington-based" employees, and therefore, Washington employment laws are applicable to him.

This is not the case. As Mr. Sanders acknowledges, the Washington Supreme Court directs courts to perform a choice of law analysis to discern whether an employee is Washington-based. *Id.* at 713, n.5. Undertaking this analysis in *Bostain*, the Washington Supreme Court found that the plaintiff was a Washington employee due to several factors that are absent here—and which demonstrate Mr. Sanders' employment cannot be Washington-based. *Id.* at 706.

To illustrate, the defendant motor carrier in *Bostain* had substantial connections to Washington which, in the context of the plaintiff's specific facts of employment, necessitated a finding that his employment was based in Washington. There, the defendant maintained a physical terminal in Vancouver, Washington where 25 trucks operated; owned property in Washington only a short distance from the terminal, where it had a wash plant, shop, yard, and maintenance facilities; had trucks parked in Seattle and other parts of Washington; and regularly conducted operations in the state involving picking up container loads of bulk shipped into Washington by rail and delivering them to places in Washington and the Pacific Northwest. *Id.* The plaintiff in *Bostain* worked out of the Vancouver terminal the entire time he worked for the motor carrier, was given orders from dispatchers at the terminal, and began and ended all runs there. *Id.*

None of those elements are present in this case. The only connections this matter has to Washington is that Mr. Sanders (1) resides in the state, (2) was recruited at home in the state through an Internet advertisement and maintained a Washington state drivers' license, and (3) occasionally received work assignments and submitted payroll information while in the state.

With respect to the first connection, residence alone is insufficient to categorize an individual as a Washington-based employee. If the opposite was true,

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT * 14

the Washington Supreme Court's analysis in *Bostain* would have ended at the plaintiff's residency. Instead, the Washington Supreme Court performed a detailed inquiry of factors that ultimately tied the defendant motor carrier to Washington. The Court also expressly directed Washington courts to apply a choice of law analysis.

The second connection is similarly unpersuasive, given that Mr. Sanders' online recruitment and Washington state drivers' license are derivative of the underlying fact that he resides in Washington. And third, while Mr. Sanders received work assignments and submitted payroll information across the country, it was only done occasionally in Washington, again, due to Mr. Sanders' residency in the state. These factors are not sufficiently directed to Washington such that Mr. Sanders can be characterized as a Washington-based employee.

The Court's conclusion is buttressed by guidance issued by the Washington Department of Labor and Industries (the "DOL"). Wash. Dep't of Labor & Industries, Minimum Wage Act–Washington-Based Employee, Admin. Policy ES.A.13 § 3, at 2 (issued May 22, 2019), https://www.lni.wa.gov/workers-rights/_docs/esa13.pdf. The DOL has identified ten factors a court may consult to determine whether an employee is "Washington-based":

> (1) Where was the employment agreement made? (2) Does the employee live in Washington? (3) Does the employer have its base of operations in Washington? (4) Does the employee have his or her base of operations in Washington? (5) Does the employer maintain a work site in Washington? (6) If the employee leaves Washington as part of the employee's work, where does the trip begin and end? (7) Does the employee receive work assignments from a location in Washington? (8) Is the employee's work supervised by individuals operating from the employer's location in Washington? (9) How much of the work is performed in Washington? [and] (10) How long is the contract to do work in Washington?

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT * 15

*Id.* The DOL guidance is not binding, but it is entitled to substantial deference. *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 913 (9th Cir. 2003), *aff'd*, 546 U.S. 21 (2005); *Reed v. City of Asotin*, 917 F. Supp. 2d 1156, 1162 (E.D. Wash. 2013). The Court finds the framework persuasive and considers each factor.

First, the parties' contract was formed outside of Washington; Mr. Sanders attended orientation and training outside of Washington; and the parties' agreements expressly provided Tennessee law applied to Mr. Sanders' employment. ECF No. 49 at ¶¶ 10, 26, 27–28. Second, it is not disputed that Mr. Sanders lives in Washington. Third, however, Western has no base of operations in Washington. *Id.* ¶ 31. Fourth, Mr. Sanders worked and lived all over the country, and only 8% of his driving time was in Washington. Fifth, Western does not have a work site or any facilities in Washington. Sixth, Mr. Sanders' trips began and ended all over the country, with most never touching Washington. *Id.* ¶¶ 29–30, 32. Seventh, none of Mr. Sanders' work assignments came from Washington, Western has no dispatchers in Washington, and all of Mr. Sanders' dispatches came from outside Washington. *Id.* ¶¶ 30, 34–35. Eighth, no one supervised Mr. Sanders' work from within Washington, as his driver manager operated outside of Washington. *Id.* ¶¶ 33, 36. Ninth, only 8% of Mr. Sanders' driving time was in Washington. *Id.* And tenth, the employment contract did not pertain to work solely or even predominately performed in Washington. *Id.* ¶¶ 27–28.

In this situation, only Mr. Sanders' residence in Washington favors a finding that he is a Washington-based employee. The remaining factors weigh against such a conclusion. Thus, the Court finds that Mr. Sanders is not a Washington-based employee under the *Bostain* framework, and Washington law does not apply to Mr. Sanders' employment with Western. *See Bostain*, 159 Wash.2d at 153. A traditional conflicts of law analysis and the DOL's guidance on the issue both demonstrate that application of Washington law, statutory or otherwise, is inappropriate. The parties' choice of Tennessee law is applicable, and it bars Mr. Sanders' employment causes

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT * 16

of action under Washington law. *Dri-Eaz Prod., Inc. v. Allen*, 2013 WL 12108076, at *3; *Ins. Auto Auctions*, 2010 WL 11688494, at *2. Since Mr. Sanders' CPA claim is derivative of Western's alleged violations of the MWA and representations regarding the applicability of Washington law, the CPA claim also fails as a matter of law.

### Conclusion

Western is entitled to summary judgment on Mr. Sanders' Washington state law claims, because Tennessee law governs the parties' employment relationship and Mr. Sanders is not a Washington-based employee. As to Mr. Sanders' 24-hour on-duty claim under federal law, the Court concludes that a dispute of material fact precludes summary judgment.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion for Summary Judgment, ECF No. 43, is **GRANTED IN PART** and **DENIED IN PART**.

2. Plaintiff's Causes of Action #1 through #6 are **DISMISSED**.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order and to provide copies to counsel.

**DATED** this 1st day of June 2022.



Stanley A. Bastian
Chief United States District Judge

ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT * 17